David VELING, Appellant,

v.

CITY OF KANSAS CITY, Missouri, Respondent.

No. WD 50042.

Missouri Court of Appeals, Western District.

April 4, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Application to Transfer Denied July 25, 1995.

---

Michael J. Gallagher, Kansas City, for appellant.

Sharon K. Euler, Kansas City, for respondent.

Before FENNER, C.J., P.J., and BERREY and ULRICH, JJ.

FENNER, Chief Judge.

Appellant, David Veling, appeals the order of the Circuit Court of Jackson County, Missouri, granting respondent City of Kansas City, Missouri's (Kansas City), motion to dismiss for Veling's failure to state a claim upon which relief could be granted. The claimed cause of action is based on an alleged breach of a written offer of employment to Veling from Kansas City.

The facts in the record reveal that appellant was a student in the archaeology program at Dickinson College in Carlisle, Pennsylvania, during the spring of 1994. Appellant applied for a position as a summer intern in the City Historic Preservation Management Division ("CHPMD") of Kansas City. The CHPMD is a division of Kansas City's City Development Department.

Hope Luhman, Ph.D., was employed by Kansas City as the City Archaeologist during this time. Dr. Luhman reported directly to Lisa Lassman Briscoe, the CHPMD Administrator. Ms. Lassman reported directly to Robert L. Collins, the Director of City Development.

In an affidavit prepared by Dr. Luhman associated with appellant's response to respondent's motion to dismiss, she states that she was given authority to fill a summer intern position for a student archaeologist beginning in June 1994 by Ms. Briscoe and Mr. Collins. Dr. Luhman states that she, along with her superiors, developed plans to hire at least one summer intern for 1994 at the onset of her employment and that Ms. Briscoe and Mr. Collins assured her that funding for such a position was available. Dr. Luhman was given authority to select whomever she chose to fill the position.

Dr. Luhman selected Veling to fill the summer intern position. A letter dated March 29, 1994, printed on city letterhead, advised Veling of his selection and offered him the position conditional on his acceptance by April 15, 1994. Dr. Luhman reports that Ms. Briscoe reviewed the letter before it was sent and that Mr. Collins was aware of the

job offer. Veling accepted in writing the offer communicated by Dr. Luhman prior to the April 15 deadline.

Dr. Luhman prepared for Veling's arrival and helped arrange his travel with the knowledge of her supervisors. Veling arrived in Kansas City and reported for work on May 31, 1994, one day early (intending to work this day without pay). Appellant continued to work until June 3, when he was informed by Ms. Briscoe that Kansas City would not execute a personal service contract with him, and that he would not be employed. Veling was also informed he would not be paid for the days he had already worked. Dr. Luhman's employment with Kansas City was also terminated on June 3, 1994.

As a result of Kansas City's actions, Veling filed the underlying petition alleging that he entered into a contract for employment in writing as a summer intern with Kansas City in the Spring of 1994. As a result of Kansas City's denial of employment pursuant to the alleged contract, Veling sought damages for lost pay and consequential damages for his lost educational opportunity.

Kansas City denied Veling's allegation and affirmatively asserted that the petition failed to state a claim for which relief may be granted in that Veling failed to allege that Kansas City entered into an enforceable contract pursuant to the statutory requirements of section 432.070, RSMo 1986, and the Kansas City Charter. A subsequent motion to dismiss on these grounds was filed by Kansas City, the granting of which is the source of this appeal.

## I. STANDARD OF REVIEW

■ In reviewing the granting of a motion to dismiss for failure to state a claim upon which relief may be granted, the appellate court determines if the facts pleaded and the inferences reasonably drawn therefrom state any ground for relief. *Sullivan v. Carlisle*, 851 S.W.2d 510, 512 (Mo. banc 1993). All of a plaintiff's averments are assumed to be true. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). No attempt is made to weigh any facts alleged as to whether they are credible or persuasive; instead, the petition is reviewed to determine

if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case. *Id.*

The facts of this case as detailed above have not been disputed by Kansas City. Kansas City argues that the facts do not establish compliance with section 432.070, and the city charter, therefore, a cause of action will not lie. If Veling can establish compliance upon the assumption that all facts averred are true and granting all reasonable inference therefrom, the dismissal of plaintiff's petition must be overturned.

## II. IS "SUBSTANTIAL COMPLIANCE" WITH SECTION 432.070 SUFFICIENT?

■ Kansas City argues that the contract alleged by Veling did not comply with section 432.070, therefore Veling has not stated a claim upon which relief can be granted. This statute reads as follows:

**432.070 Contracts, execution of by counties, towns—form of contract.**—No county, city, town, village, school township, school district or other municipal corporation shall make any contract, unless the same shall be within the scope of its powers or be expressly authorized by law, nor unless such contract be made upon a consideration wholly to be performed or executed subsequent to the making of the contract; and such contract, including the consideration, *shall be in writing and dated when made, and shall be subscribed by the parties thereto, or their agents authorized by law and duly appointed and authorized in writing.*

To be enforceable, a contract with a municipal corporation must comply with the mandatory statutory provisions of section 432.070. *Donovan v. City of Kansas City*, 352 Mo. 430, 175 S.W.2d 874, 881–82 (1943).

The Kansas City Charter also speaks to issues pertinent to the evaluation of Veling's claim. Section 82 provides the following regarding execution of contracts:

All contracts shall be executed in the name of the city by the head of the department, board, or agency or the officer concerned. . . . No contract or order purport-

ing to impose any financial obligation on the city shall be binding upon the city unless it be in writing and unless there is a balance, otherwise unencumbered, to the credit of the appropriation to which the same is to be charged sufficient to meet the obligation thereby incurred, and unless such contract or order bear the certificate of the director of finance so stating. . . .

Section 82 continues and also includes the following:

Persons contracting with the city under term contracts shall, during the term of the contract, furnish to the city . . . the contractual services, therein described, . . . *and such contracts need not bear the certification of the director of finance as herein provided.* . . .

Kansas City takes the position that the contract Veling alleges is not sufficient as there is no single writing "subscribed by the parties," there is no certificate from the Director of Finance on any document alleged to be part of the contract, and Dr. Luhman was not a properly authorized agent of the city with authority to enter into such a contract. Further, the respondent alleged that the doctrine of "substantial compliance" is not available for argument with regard to contracts under section 432.070. Based on these arguments, the respondent's motion to dismiss was granted.

■ The issue of whether the doctrine of "substantial compliance" applies to contracts governed by section 432.070 must be addressed as the first part of this court's analysis. Appellant cites the case of *Lynch v. Webb City School Dist. No. 92,* 418 S.W.2d 608 (Mo.App.1967), in support of his position that the alleged contract may be interpreted using the "substantial compliance" doctrine. In *Lynch,* the court was faced with a decision as to whether a teacher's contract was in compliance with statutes governing their contents and execution. The Webb City School Board alleged that Lynch's contract was defective in that it did not bear the signature of the school board president and an attestation of the board's secretary. The court concluded that the contract was not defeated by the mere absence of the signature and attestation, as there was evidence showing the

Board had authorized the offer of reemployment. *Lynch,* 418 S.W.2d at 614. Therefore, the court determined that the plaintiff "established substantial and sufficient compliance with the statutory requirements" for a valid contract, making specific reference to substantial compliance with section 432.070. *Id.*

Kansas City argues that teachers' contracts differ from the contract alleged by Veling in that there was a specific statutory directive that teachers' contracts were to be construed under the general law of contracts, thereby making the doctrine of substantial compliance available for use in evaluating them. This provision reads as follows:

The contract required by sections 168.101 [time and manner of originally employing teachers] and 168.111 [time and manner for reemployment of teachers] shall be construed under the general law of contracts. . . .

This directive makes no reference to section 432.070. The statutory clause makes reference to application of the general law of contracts only to sections 168.101 and 168.111. There is also no indication that the court relied on this directive to apply the doctrine of substantial compliance to section 432.070. Kansas City's argument that the application of the doctrine of substantial compliance as it pertains to section 432.070 stems from a special statutory provision governing interpretation of teacher contracts is unpersuasive.

Kansas City also cites the cases of *Donovan v. City of Kansas City,* 352 Mo. 430, 175 S.W.2d 874 (1943), and *Kansas City v. Rathford,* 353 Mo. 1130, 186 S.W.2d 570 (1945), as standing for the proposition that the requirements of section 432.070 are mandatory and must be strictly enforced. These cases are distinguishable from the case at bar as the parties seeking recovery were trying to enforce oral statements or representations of the municipality or its representatives. Respondent also cites *Kennedy v. City of St. Louis,* 749 S.W.2d 427 (Mo.App.1988), as support for its position, but this case is distinguishable on its facts from the case at bar.

In *Donovan*, plaintiff's decedent was a food supplier who supplied perishable food to the defendant for use in its hospital and penal institutions. The normal practice for ordering goods from plaintiff's decedent was for respondent to use five duplicate requisition forms listing the items required and the price thereof, showing approval of the department head, and bearing the certification of the Director of Finance. *Donovan*, 175 S.W.2d at 877–78. These forms were sent to plaintiff's decedent, who would return the invoice in triplicate to the Commissioner of Purchases. *Id.* at 878. Transactions between plaintiff and defendant in this manner were not questioned by the parties.

After the initial requisition was exhausted, however, forms for additional requisitions were forwarded to the Commissioner of Purchases, who would *telephonically* order additional perishable goods from plaintiff's decedent and direct delivery thereof. *Id.* The Commissioner retained the original and all copies of the requisition forms. *Id.* Copies of invoices were provided to defendant by plaintiff's decedent, who sought enforcement of the telephonically placed orders. *Id.* The court refused to enforce the contract alleged by plaintiff despite the history of dealings between the parties, stating that section 432.070 required a contract with a municipality to be in writing. *Id.* at 881–82.

In *Rathford*, the plaintiff city filed conspiracy and fraud charges against defendants and alleged that no written contract was entered for a waste water survey defendant was to provide, and defendants, conspiring to defraud, induced payment by the city. In response, defendants alleged an oral contract based on instructions from the acting director of the plaintiff's water department. The court declined to find that a contract existed between the parties absent a writing complying with the requirements of section 3349, RSMo 1939, and a municipal ordinance similar to the one presented by the case at bar (section 3349, RSMo 1939, is now section 432.070). *Rathford*, 186 S.W.2d at 574. The court stated that the fact a municipality received the benefit of a performance by the other party does not make the municipality liable either on the theory or ratification,

estoppel or implied contract. *Id.* Such a situation is distinguishable from cases where there were mere irregularities in the exercise of power. *Id.* at 575. Again, no contract in writing was alleged by the party asserting existence of a contractual relationship.

In *Kennedy*, four ophthalmology residents joined defendant's residence program on the oral promise made by defendant's representative that "if their performance level was satisfactory that they would be appointed to a new year and the next level in the program" until they completed their training. 749 S.W.2d at 429. Each plaintiff signed a one year contract when there were promoted to the next level of the residency. The residency program of which plaintiffs were a part was discontinued due to budgetary and accreditation difficulties while plaintiffs were still in training. Plaintiffs were removed from defendant's payroll in June 1983, after having signed contracts for the 1983–84 year. Plaintiffs sought enforcement of these alleged contracts by estoppel.

The *Kennedy* court refused to allow the alleged contracts signed by plaintiff into evidence, finding that they did not bear the signature of the comptroller of the City of St. Louis, a requisite element of a valid contract with the city pursuant to Article XXV, § 9, of the St. Louis Charter. 749 S.W.2d at 432. The alleged contracts clearly did not comply with statutory requirements, therefore, plaintiffs' claims based on the contracts were dismissed. *Id.* at 431–33. Plaintiffs did not allege that there were provisions in the St. Louis Charter allowing for a contract to be executed without the comptroller's signature. The resulting absence of a valid contract fatally flawed plaintiffs' estoppel argument against the city. *Id.* at 433–34.

This court believes the situation presented in the case at bar is more analogous to that presented in *Lynch* than those presented by the cases set forth by defendant in support of its position. Veling is attempting to establish a contract of employment, unlike plaintiff in *Donovan* and defendants in *Rathford*, who were seeking payment for services and defending against fraud allegations regarding services provided, respectively. Further, unlike plaintiffs in *Kennedy*, in the case at bar,

**124**

Veling is not asking the courts to overlook a statutory or charter requirement for a valid contract with a municipality in arguing for the application of equitable estoppel; instead, Veling asks the court to find he "substantially complied" with the requisite elements of section 432.070, and the Kansas City Charter.

■ Applying the doctrine of substantial compliance and assuming the facts pled by Veling are true, this court cannot conclude that Veling fails to state a claim upon which relief may be granted. The writings alleged by Veling could constitute a valid contract between the parties pursuant to the doctrine of substantial compliance. The holding in the *Lynch* case could allow a finding that the contract was valid and authorized, even though it did not bear the signature of the department director. Additionally, there is a question of fact as to whether Dr. Luhman was an "officer" of Kansas City with the authority to contract on its behalf. The alleged contract could also fall within the exception to the charter requirement that all contracts bear the seal of the Director of Finance of the respondent city. Veling should be given the opportunity to prove his case at trial. If Veling can show that the requisites of section 432.070 and the Kansas City Charter were substantially complied with, the trial court may then consider whether it should apply the doctrine of equitable estoppel to the facts and circumstances alleged.

The order of the trial court dismissing Veling's cause for failure to state a claim upon which relief may be granted is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

All concur.