Christopher S. WOODS, By His Next
Friend Lena WOODS, Lena Woods,
Anne Dunnegan and Larry Woods,
Plaintiffs–Respondents,

v.

Jason R. CORY, as Personal Represen-
tative of the Estate of Ronald
Murray Cory, Defendant,

and

U.S. Foodservice, Defendant–Appellant.

No. 27247.

Missouri Court of Appeals,
Southern District,
Division One.

March 10, 2006.

Rehearing Denied March 31, 2006.

Lawrence B. Wittels, Law Office of Lawrence B. Wittels, St. Louis, MO, for Appellant.

Elizabeth A. Blaich, Edmundson, Edmundson & Innes, Poplar Bluff, MO, for Respondents.

GARY W. LYNCH, Judge.

Appellant U.S. Foodservice (Defendant) appeals the judgment of the Circuit Court of Howell County enforcing a settlement agreement between it and Christopher S. Woods, by his Next Friend Lena Woods, and Lena Woods, Ann Dunnegan, and Larry Woods (referred to collectively as Plaintiffs). We affirm.

## 1) Factual and Procedural Background

Defendant's first appeal in this case was dismissed. *Woods v. Cory*, 149 S.W.3d 912 (Mo.App.2004) (*Woods I*). We borrow freely from the recitation of the facts in that opinion without further citation.

The genesis of this appeal is an automobile accident involving a vehicle driven by Ronald Murray Cory (Cory) and one driven by Opal Woods in which Christopher S. Woods (Christopher) was a passenger. The accident occurred on Highway 60 in Carter County, Missouri on February 15, 2001. Opal Woods and Cory died as a result of injuries sustained in the accident, and Christopher suffered serious injuries.

Christopher, by his Next Friend Lena Woods, filed suit against Jason R. Cory, the Personal Representative of the Estate of Cory (Personal Representative), and Defendant, as Cory's employer, for the alleged negligence of Cory in causing the accident. Lena Woods, Ann Dunnegan, and Larry Woods (Wrongful Death Plaintiffs), the surviving children of Opal Woods, also filed suit pursuant to § 537.080.1(1) against the same parties, for the wrongful death of Opal Woods.[1] Both petitions alleged that Cory was acting within the scope of his employment with Defendant at the time of the accident. The two cases were consolidated, and the venue was ordered transferred to Howell County by the trial court on September 27, 2001.

Defendant eventually moved for a summary judgment in the consolidated cases, contending that there was no genuine issue of fact concerning whether Cory was acting in the scope of his employment with Defendant and that it was entitled to a judgment as a matter of law. On February 18, 2003, all parties and their attorneys appeared before the trial court for the purpose of argument on Defendant's Motion for Summary Judgment and also participated in a settlement conference. The court granted the parties additional time to submit supplemental material to be considered in the motion for summary judgment and to attempt to settle all outstanding matters. The court ordered that in the event the case was not settled within fifteen days [by March 5, 2003], the Court would thereafter rule on the pending motion for summary judgment.

Three days later, Plaintiffs' attorney faxed to Defendant's attorney a letter, asking for a settlement offer from Defendant. Four days after that, on February 25, 2003, a letter from Defendant's attorney was faxed to and received by Plaintiffs' attorney containing the following settlement offer (Offer):

> I have just spoken with Mr. Astrachan's superiors at U.S. Foodservice. I have only been authorized to offer $35,000.00 to settle all cases and claims. This is the top dollar I have. I am not holding back on any amounts, nor do I feel that USF will authorize more at this point. If this will get it done let me know. The Company has taken the position that they are willing to take the exposure at this point in time.

This letter contained no time limit for acceptance of the Offer. The next day, Plaintiffs' attorney mailed a copy of the Offer to his clients who reside in Missouri, Tennessee and Arkansas.

On February 28, 2003, unknown to the parties or their attorneys, the trial court prematurely entered an order in favor of Defendant denominated as "Judgment on Issue of Summary Judgment Motion of Defendant Company U.S. Food Service, A Corporation." This order contained the following language: "The Court therefore sustains Defendant company's Motion for Summary Judgment, and dismisses as to them. This instrument being a final judgment." Plaintiffs' attorney and Defendant's attorney each received a copy of this order on March 3, 2003.

During the morning of March 12, 2003, at approximately 10:55 a.m., Plaintiffs' attorney faxed a letter to Defendant's attorney that was received by him in his office. This letter (Acceptance) stated: "We accept the offer of U.S. Foods to settle all matters connected with these cases for $17,500.00 to each case." That afternoon, at approximately 4:13 p.m., Defendant's

---

1. All references to statutes are to RSMo (2000) and all references to rules are to Missouri Court Rules (2005), unless otherwise indicated.

counsel faxed a letter to Plaintiffs' attorney's office stating: "U.S. Foodservice is no longer interested in discussing settlement of this case."

On March 18, 2003, Plaintiffs filed a "Motion to Set Aside or Withdraw Order Granting Summary Judgment and to Enforce Settlement." Fifty-seven days later, on May 14, 2003, the trial court entered an "Order" setting "aside its judgment dated February 28, 2003, granting summary judgment to Defendant U.S. Food Service Corporation."

The Wrongful Death Plaintiffs dismissed their wrongful death claim against Personal Representative on July 1, 2003. Christopher dismissed his personal injury claim against Personal Representative on August 22, 2003.

Plaintiffs' attorney and Defendant's attorney filed with the court on January 30, 2004, their Joint Stipulation of Facts and Affidavit for Consideration in Plaintiffs' Motion to Enforce Settlement (Joint Stipulation). The Joint Stipulation consists of fourteen paragraphs of undisputed facts and two paragraphs, numbered 11 and 15, of testimony. Paragraph 11 provides: "Defendant's counsel states that on March 10, 2003, a letter was mailed from his office in St. Louis to Plaintiffs' counsel stating that Defendant no longer was interested in discussing settlement of this matter." A copy of the letter was attached as an exhibit and made a part of the Joint Stipulation. Paragraph 15 provides: "Plaintiffs' counsel states that other than the fax copy received on the afternoon of March 12, as set out herein above, the March 10 letter from Defendant's counsel has never been received by him or his office." The Joint Stipulation is the only evidence offered to or relied upon by the trial court in deciding Plaintiffs' motion to enforce settlement agreement.

Four days later, the trial court, by "Order" noting that "[t]he Court has reviewed and has in hand the stipulation of facts which counsel has provided for the submission of the issues herein," entered an order enforcing the settlement agreement. This order was followed on March 15, 2004 with another order designated as "Amended Judgment" granting Plaintiffs' judgment against Defendant in the amount of $35,000.00.

The "Amended Judgment" enforcing the settlement agreement was the basis of Defendant's appeal in *Woods I*. This court dismissed the appeal for lack of jurisdiction, holding that this order was not a final judgment as to the wrongful death claim because the trial court failed to apportion the judgment among Wrongful Death Plaintiffs, as required by § 537.095.3, and was not a final judgment as to the personal injury claim because the trial court failed to make an express determination that there was "no just reason for delay," as required by Rule 74.01(b) where multiple claims are pending. *Woods I* at 914–15.

Following the dismissal of the appeal in *Woods I*, the trial court, on August 12, 2005, entered an order denominated as "Second Amended Judgment" enforcing the settlement agreement; entering judgment against Defendant in the amount of $35,000.00; apportioning that judgment amount equally between the personal injury claim and the wrongful death claim; and further apportioning the wrongful death amount among the Wrongful Death Plaintiffs. Defendant appeals this order.[2]

---

**2.** Defendant's Notice of Appeal filed on September 15, 2005 in response to the section entitled "Judgment or Order Appealed From" states: "Judgment of August 12, 2005 as well as Order of May 14, 2003 and March 15, 2004. Copies attached." If either of the latter two orders was a final judgment, the time period within which to file a Notice of Appeal

## 2) Jurisdictional Issue

 Neither party has directly challenged whether the order denominated as the "Second Amended Judgment" is a final judgment for purpose of conferring appellate jurisdiction upon this court. *See* § 512.020 and *MacMillan v. MacMillan*, 960 S.W.2d 518, 519 (Mo.App.1998). However, Defendant, in its first point relied on, contends that the order entered by the trial court on February 28, 2003 became a final judgment thirty days after its entry and that the trial court thereafter lost jurisdiction to enter an order setting it aside.[3] If this contention is correct, then the trial court also would not have jurisdiction to enter any other order after that date, including the "Second Amended Judgment" which is the basis for this appeal. "We are required to consider, *sua sponte*, whether the prerequisite of an appealable final judgment has been met." *Woods I*, 149 S.W.3d at 914 (citing *American Standard Ins. Co. of Wisconsin v. Bittick*, 112 S.W.3d 55, 56 (Mo.App.2003)).

### a) Order Entered on February 28, 2003 is Not a Final Judgment

On February 28, 2003, Christopher was pursuing a personal injury claim against Defendant and a personal claim against Personal Representative. At the same time, Wrongful Death Plaintiffs were pursuing a wrongful death claim against Defendant and a wrongful death claim against Personal Representative. Thus, the case was in the posture of having multiple claims involving multiple parties. The order entered by the trial court on that date disposed of Christopher's personal injury claim against Defendant and Wrongful Death Plaintiffs' claim for wrongful death against Defendant. However, Christopher's personal injury claim against Personal Representative and Wrongful Death Plaintiff's claim for wrongful death against Personal Representative remained unresolved and pending.

 For an order of the trial court to rise to the level of a final judgment for purposes of appeal, it must first be classified as a judgment, and then, if so classified, determined to be final. *City of St. Louis v. Hughes*, 950 S.W.2d 850, 853 (Mo. banc 1997). Rule 74.01 provides the criteria by which to evaluate a particular order of the trial court in making the determination as to whether it is a judgment. *Id.* Defendant correctly points out that the order entered by the trial court on February 28, 2003 meets all of the criteria as set forth in Rule 74.01(a). However, Defendant incorrectly concludes that meeting these criteria alone is all that is necessary to declare this order a judgment. Defendant completely ignores the additional criteria in Rule 74.01(b).[4]

---

has long expired. Rule 81.04(a). Therefore, if the trial court had jurisdiction to enter it and it has become final, the August 12, 2005 order is the only order that Defendant has timely appealed.

**3.** Defendant's Point I states:

The trial court erred in sustaining Plaintiffs' Motion To Set Aside Or Withdraw Order Granting Summary Judgment because the Trial Court had no jurisdiction to do so in that Plaintiffs' Motion does not qualify as an authorized after-trial motion extending the jurisdiction of a the trial court and the Trial

Court failed to rule on Plaintiffs' Motion with [sic] the 30 days in which a Trial Court retains jurisdiction of its orders.

**4.** Rule 74.01(b) provides:

**Judgment Upon Multiple Claims or Involving Multiple Parties.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may enter a judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the

Sub-section (b) of Rule 74.01 adds an additional requirement in a case involving either the presentation of multiple claims or multiple parties for an order of the trial court disposing of less than all of the claims and all of the parties to be a judgment: the order must contain "an express determination that there is no just reason for delay." *Woods I,* 149 S.W.3d at 915. In the absence of this requirement, the order in such a case is not a judgment by definition. If the order is not a judgment, it cannot be a final judgment. *Id.*

In the instant case, the order entered by the trial court on February 28, 2003 disposed of less than all of the pending claims; disposed of less than all of the parties; and contained no determination that there is no just reason for delay. Without the latter, the order is not a judgment as defined by Rule 74.01.[5] *Id.* Defendant's Point I is denied.

### b) Order Entered on March 15, 2004 is Not a Final Judgment

The order entered by the trial court on March 15, 2004 was the basis for the appeal in *Woods I* and, as noted above, this court held that it was not a final judgment. *Id.* That determination is the law of this case. *See Williams v. Kimes,* 25 S.W.3d 150, 153 (Mo. banc 2000).

### c) Order Entered on August 12, 2005 is a Final Judgment

■ The order entered by the trial court on August 12, 2005 disposes of all the pending claims and all pending parties. There is nothing left for determination by the trial court. There is no dispute that the order meets all of the requirements of Rule 74.01(a). Therefore, this order is a judgment as defined by Rule 74. Thirty days after the entry of this judgment, no after-trial motions having been filed, it became final. Rule 81.05(a)(1). Within ten days after this judgment became final, Defendant filed its Notice of Appeal. Rule 81.04(a). Consequently, we have jurisdiction to review this appeal.

### 3) Settlement Agreement is Enforceable

[5–7] "Agreements to settle pending lawsuits are enforceable by motion." *B–Mall Co. v. Williamson,* 977 S.W.2d 74, 77 (Mo.App.1998). "The party requesting specific performance of the agreement has the burden of proving the claim by clear, convincing and satisfactory evidence." *Id.* "Freedom of contract and peaceful settlement of disputes are encouraged in the law." *Id.*

■ Defendant's Point II alleges the trial court erred in enforcing the settlement agreement in two respects.[6] First, Defendant contends: "The trial court applied the wrong standard of proof in that the trial court failed to make a finding that Plaintiffs had sustained their burden with clear and convincing evidence." Second,

---

absence of such determination, any order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

5. Rule 75.01 is inapplicable to this order because the thirty-day period contained therein

and raised in Defendant's Point I commences only upon the entry of a judgment. *Davis v. Dep't of Soc. Servs., Div. of Child Support Enforcement,* 15 S.W.3d 42, 45 (Mo.App. 2000).

6. Defendant's counsel should exercise caution in grouping disparate claims of error in a single point relied on. "Structuring a point relied on so that it groups together contentions not related to a single issue violates Rule 84.04." *Martin v. Reed,* 147 S.W.3d 860, 863 (Mo.App.2004).

Defendant argues: "There was insufficient evidence to sustain the motion in that Plaintiffs failed to accept the offer as made by Defendant in a reasonable time under the circumstances and instead Plaintiffs communicated additional terms and conditions thus constituting a counteroffer rejected by Defendant." These contentions will be addressed in the order presented by Defendant.[7]

### a) Lack of Finding by Trial Court

Defendant's first claim of error on this point faults the trial court for failing to make a specific finding of fact related to whether Plaintiffs sustained the requisite burden of proof. In accordance with Rule 73.01(c), it was Defendant's obligation to request the court to make such a finding of fact. *Hammons v. Ehney,* 924 S.W.2d 843, 849 (Mo. banc 1996). Failure to make a timely and specific request precludes any claim of error. *Millard Farms, Inc. v. Sprock,* 829 S.W.2d 1, 4 (Mo.App. 1991). A search of the record fails to reveal any timely and specific request for a finding of fact on this issue to the trial court by Defendant. This claim of error is denied.

### b) Enforcement of Settlement Agreement is Supported by Substantial Evidence and does not Erroneously Apply the Law

Defendant's second claim of trial court error on this point is that there was "insufficient evidence" that Plaintiffs accepted the Offer in two respects—first, within "a reasonable time under the circumstances" and second, by introducing "additional terms and conditions." We first note that

Defendant failed to set forth the applicable standard of review for this point in the argument section of its brief. Rule 84.04(e). Second, Defendant's use of the term "insufficient evidence" indicates that Defendant is confused as to the applicable standard of review.

### i) Standard of Review

In a court-tired case, such as this case:

> Review is performed pursuant to *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be sustained unless there is not substantial evidence to support it, it is against the weight of the evidence or it erroneously declares or applies the law. *Id.* This court defers to the trial court's findings of fact, recognizing the superior ability of the trial court to judge the credibility of the witnesses. *Brawley v. McNary,* 811 S.W.2d 362, 365 (Mo. banc 1991). All evidence and permissible inferences favorable to the prevailing party are accepted as true; evidence and inferences to the contrary are disregarded. *Pathway Financial v. Schade,* 793 S.W.2d 464, 467 (Mo.App. 1990).

*B–Mall Co.,* 977 S.W.2d at 77. This is so even in cases where the clear and convincing standard of proof is applicable. *Greeno v. State,* 59 S.W.3d 500, 504 n. 4 (Mo. 2001). Thus, the pertinent inquiry is whether the decision of the trial court on the first issue is supported by substantial evidence and on the second issue correctly applies the law.

---

7. Defendant also argues in the argument section of its brief under Point II that the Offer was automatically terminated by subsequent events, i.e., the entry of summary judgment in its favor. This argument was not included in its point relied on. "The questions for decision on appeal are those stated in the points relied on; a question not there presented will be considered abandoned. Issues to which an appellant alludes only in the argument portion of his brief are not presented for review." *In re Marriage of Flud,* 926 S.W.2d 201, 206 (Mo.App.1996) (internal citations omitted).

### ii) Plaintiffs' Accepted the Offer Within a Reasonable Time Period

"Inherent in the offeror's power as master of his offer is the power to insist that the offer may terminate upon the occurrence of a condition and that it may only be accepted in accordance with the conditions stated by it." *Boehm v. Reed,* 14 S.W.3d 149, 151 (Mo.App.2000). "When an offer is made and no time limit is specified as to the time to accept the offer and the duration of the power of acceptance is not stated, then it is deemed that the offer is open for a reasonable period of time." *Hammond v. Missouri Property Ins. Placement Facility,* 731 S.W.2d 360, 365 (Mo.App.1987) (citing RESTATEMENT (SECOND) OF CONTRACTS, § 41 (1981)). "The resolution of what is a reasonable time is a question of fact to be determined by the trier of fact." *Id.* "There is no contract until acceptance of an offer is communicated to the offeror." *Hendricks v. Behee,* 786 S.W.2d 610, 611 (Mo.App.1990). An offeror may withdraw his offer at any time before acceptance and communication of that fact to him. *Id.* at 612. "To be effective, revocation of an offer must be communicated to the offeree before he has accepted." *Id.*

The totality of the evidence presented to the trial court consisted of the Joint Stipulation. The facts were all undisputed and non-contradictory, except for the testimony regarding the March 10, 2003 letter purportedly sent by Defendant's attorney to Plaintiffs' attorney, which purported to revoke the Offer. "[W]e defer to the trial court's determination of witness credibility and recognize that the court is free to accept or reject all, part, or none of the testimony presented." *Ketcherside v. McLane,* 118 S.W.3d 631, 634 (Mo.App. 2003). The trial court was free to disbelieve Defendant counsel's testimony that the letter was sent in the first place or that, if sent, the trial court could have believed Plaintiffs counsel's testimony that it was not received by Plaintiffs' counsel before Plaintiffs' Acceptance of the Offer was received by Defendant's counsel.

Therefore, viewing this evidence in the light most favorable to the judgment, there is substantial evidence that: the Offer was made on February 25, 2003; the Offer did not contain any condition that it be accepted before the trial court ruled on Defendant's pending motion for summary judgment or that it be accepted within any particular period of time; Defendant did not revoke the Offer before Plaintiffs' Acceptance occurred on the morning of March 12, 2003; and Plaintiffs' Acceptance occurred within a reasonable period of time after the making of the Offer. There was no evidence presented to the trial court which would support a finding that the fifteen-day time period between the Offer and its acceptance was not reasonable. Even if such evidence existed, the determination of a reasonable period of time is a fact issue for determination by the trial court. *Hammond,* 731 S.W.2d at 365. Defendant has failed to cite this court to any authority for the proposition that this time period is unreasonable as a matter of law. This point is denied.

### iii) Plaintiffs Did Not Introduce Additional Terms and Conditions

There is no factual dispute about the occurrence or content of the Acceptance. Thus, there is substantial evidence to support the trial court's finding that the Acceptance occurred. Defendant, although casting this argument in terms of "insufficient evidence," is actually asking this court to determine that the trial court misapplied the law to the undisputed facts. That law is: "An acceptance which introduces new or variant terms from the offer

amounts to a counter-proposition and rejection of the offer." *American Nat'l Ins. Co. v. Noble Communs. Co.*, 936 S.W.2d 124, 132 (Mo.App.1996).

■ Defendant claims that the language of the Acceptance to "settle all matters connected with these cases for $17,500.00 to each case" introduced new or variant terms from the language of the Offer to pay "$35,000.00 to settle all cases and claims" and, therefore, as a matter of law was not an acceptance of the Offer, but rather, constituted a counter-offer that terminated the Offer. This claim is without any merit. There were two claims pending between Plaintiffs and Defendant. These claims were originally filed as two separate cases that were later consolidated into one case with two claims against Defendant. It is undisputed that Defendant offered to pay $35,000.00 to settle the two claims and Plaintiffs accepted $35,000.00 to settle both claims. There were multiple claims with multiple plaintiffs. The fact that Plaintiffs chose this method to communicate to Defendant that they had internally apportioned the settlement amount equally between the two claims did not alter, change or vary in any respect from the terms of the Offer. Defendant did not consider the eventual apportionment of the proceeds an essential element of the agreement because Defendant failed to make any specific apportionment a condition of the Offer. Defendant has failed to offer this court any cogent explanation as to why the eventual apportionment of the settlement proceeds would have any impact or significance upon it. We can discern none. This point is denied.

**4) Propriety of Trial Court's Actions Related to Summary Judgment**

■ Defendant's Point III, among other things, invites this court to gratuitously determine that the trial court "correctly granted Defendant's Motion for Summary Judgment." This request does not comply with the requirements of Rule 84.04(1)(A) in that it does not "identify the trial court ruling or action that the appellant *challenges.*" (Emphasis added).

■ In addition, should this court be inclined to accept Defendant's invitation, which it is not, the record on appeal does not include: Defendant's Motion for Summary Judgment filed on October 17, 2002; Defendant's Statement of Uncontroverted Material Facts attached to Defendant's Motion for Summary Judgment, as required by Rule 74.04(c)(1); Defendant's separate legal memorandum explaining why summary judgment should be granted, as required by Rule 74.04(c)(1); Plaintiffs' Response to Defendant's Motion for Summary Judgment filed on November 18, 2002; Plaintiffs' Suggestions in Opposition to Defendant's Motion for Summary Judgment filed on November 18, 2002; Defendant's Response to Plaintiff's Supplemental Undisputed Facts filed on December 18, 2002; Plaintiffs' Motion to Strike or Deny Motion for Summary Judgment and Sanctions Against [Defendant] filed on February 13, 2003; Plaintiffs' Supplemental Response Opposing [Defendant's] Motion for Summary Judgment; or the Supplemental Affidavit in Support of [Defendant's] Motion for Summary Judgment filed on March 3, 2003. Without a complete record on appeal, which was the Defendant's responsibility to provide, we have no basis upon which to rule upon this request. *Brancato v. Wholesale Tool Co.*, 950 S.W.2d 551, 554–55 (Mo.App.1997).

■ Defendant's Point III next complains that the trial court "erred in sustaining Plaintiffs' Motion to Set Aside or Withdraw Order Granting Summary Judgment." As discussed in point 2(a) above, the order of the trial court sustaining Defendant's Motion for Summary Judgment

entered on February 28, 2003, was subject to the provisions of Rule 74.01(b). That rule further provides:

[A]ny order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and *the order* or other form of decision *is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.* (Emphasis added.)

Because the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties did not occur until August 12, 2005, the trial court did not err on May 14, 2003, in setting aside the February 28, 2003 order.[8]

 Defendant's Point III essentially complains that the trial court erred in ultimately denying its motion for summary judgment. However, "a trial court's denial of a motion for summary judgment is not subject to appellate review." *Cain v. Buehner & Buehner,* 839 S.W.2d 695, 699 (Mo.App.1992).

 Finally, resolution of the issues raised by Defendant in this point became moot upon the trial court's determination of the existence of an enforceable settlement agreement as discussed in point 3) above. That agreement provided the basis for the entry of the Second Amended Judgment by the trial court in this case, regardless of the propriety of the trial court's actions related to initially granting Defendant's motion for summary judgment or thereafter setting it aside. *See B–Mall*

---

8. Defendant argues that the trial court's action was "clearly erroneous and an abuse of discretion" without citation to any authority and without any explanation for such lack of authority. Therefore, this argument is not

*Co.,* 977 S.W.2d at 77; *Beck v. Shrum,* 18 S.W.3d 8, 10 (Mo.App.2000).

### 5) Decision

The Judgment of the trial court is affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.

preserved for review. *P & K Heating & Air Conditioning v. Tusten Townhomes Redevelopment Corp.,* 877 S.W.2d 121, 126 (Mo.App. 1994).